PELLA WINDOWS AND DOORS, INC.

v.

ST. MARY'S BANK

August 27, 1990

*Rinden Professional Association*, of Concord (*Paul A. Rinden* on the brief and orally), for the plaintiff.

*Raymond A. Cloutier Law Offices*, of Manchester (*Richard E. Fradette* and *Robert J. Meagher* on the brief, and *Mr. Meagher* orally), for the defendant.

PER CURIAM. The plaintiff subcontractor, Pella Windows and Doors, Inc. (Pella), seeks to recover from the defendant construction mortgagee, St. Mary's Bank (St. Mary's), $31,178.15 as payment for windows ordered by the general contractor, The Christian Group, Inc. (Christian), basing its claim on Christian's written authorization to St. Mary's to pay Pella directly such sums as would otherwise be payable to Christian. The Superior Court (*Dalianis*, J.) found no dispute that the terms of the authorization shielded St. Mary's from liability to Pella and granted St. Mary's second motion for summary judgment, from which Pella appeals. We affirm.

In June of 1984, Jack and Cheryl Faraci contracted with Christian to construct a house in Hollis. To finance the project, the Faracis entered into a $288,000 construction loan agreement with St. Mary's, which covered virtually their entire anticipated construction costs, and which required that all loan disbursements were to be made jointly payable to the Faracis and Christian.

Christian subsequently placed a $23,223.36 order with Pella to purchase windows for the Faraci house. On October 24, at Pella's behest, Christian executed an agreement, drafted by Pella on Pella stationery, that authorized St. Mary's to pay the $23,223.36 directly to Pella out of the construction loan funds. The agreement purported to be an "assignment of funds to Pella Windows and Doors, Inc.," and explicitly released St. Mary's "for any liability that may be involved in connection with releasing these funds." St. Mary's also signed this agreement and the Faracis consented to it orally.

Due to an error in the original window order, Christian subsequently increased it to $31,178.15, and, consequently, Pella drafted, and St. Mary's and Christian executed, a new agreement on November 27, identical to the first in all respects except for the amount of funds to be released, which was changed to reflect the increased order. At some point, apparently after Christian had placed the new order but before it had executed the new agreement, St. Mary's sent Pella a check for $31,178.15. Pella, however, at the Faracis' request, returned the check to St. Mary's because it had not yet completed delivery of the windows ordered.

Pella completed delivery in June of 1985 and repeatedly demanded payment from St. Mary's without success. During this period, Christian began to experience financial difficulties, and eventually ceased performance of its construction contract. The Faracis nonetheless completed construction of their house, incurring over $60,000 in costs in excess of their $288,000 loan, but Pella never received payment for its windows. According to the testimony of Mr. Faraci, Christian received about $260,000 of the loan, which included payment for the windows, and Christian failed to pay several subcontractors in addition to Pella.

Pella sued Christian, the Faracis and St. Mary's, and obtained a default judgment against Christian, but apparently was unable to recover on it. It obtained an unfavorable decision in its suit against the Faracis, the appeal of which we address today in a separate opinion.

In the present action, Pella filed a motion for summary judgment, supported by an affidavit sworn to by Pella's office manager. The superior court denied Pella's motion, as well as St. Mary's subsequent motion for summary judgment. In filing its second such motion, St. Mary's attached no new affidavits, save for a copy of the affidavit previously filed by Pella.

The superior court, basing its decision on the undisputed facts set forth in Pella's pretrial statement of facts, found with respect to St. Mary's second motion for summary judgment that the November 27 agreement was an assignment contract designating Pella as the assignee, but granted St. Mary's summary judgment on the ground that the agreement's release clause provided St. Mary's a defense to any liability it might have as obligor to Pella under the contract. We, however, do not see it as essential to apply the law of assignment to the November 27 agreement, since the agreement's plain language relieved St. Mary's of liability, regardless of how one characterizes the agreement.

█ It is undisputed and clear both from the plaintiff's original writ and its affidavit in opposition to the motion under consideration that the plaintiff based its claim solely on the November 27 agreement. As this agreement contained a clause that explicitly released St. Mary's from any potential liability in connection with payments to Pella, and as Pella did not proffer an alternative reading of this clause, we must construe the agreement to have relieved St. Mary's, in the absence of fraud, of any such liability. As there was no genuine issue of material fact as to these matters, RSA 491:8-a, III, we hold that the superior court correctly granted the defendant's motion for summary judgment.

█ Pella argues in addition that, because St. Mary's failed to attach a new affidavit in support of its second motion for summary judgment, that motion should have been denied as procedurally defective pursuant to RSA 491:8-a, II. A party, however, need not attach a different affidavit to every summary judgment motion it files in a given case; it is sufficient for the purpose of RSA 491:8-a, II that such a motion is adequately supported by an affidavit already on file with the court in that case, irrespective of which party filed it, as "summary judgment is to be granted or denied based on the entire record before the court," *Brown v. John Hancock Mut. Life Ins. Co.*, 131 N.H. 485, 491, 558 A.2d 822, 825 (1989); *see* RSA 491:8-a, III.

*Affirmed.*

HORTON, J., did not sit.